2003 VT 3

**STATE of Vermont v. David A. BEAUREGARD**

[820 A.2d 183]

No. 02-208

¶ 1. January 2, 2003. Defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor (DUI), second offense, 23 V.S.A. § 1201(a)(2). He entered a conditional plea of guilty, reserving the right to appeal the denial of his motion to suppress evidence based on his contention that the initial traffic stop was illegal. On appeal, defendant argues that the stop was a violation of the Fourth Amendment to the United States Constitution and that Vermont's defective equipment statute is unconstitutionally vague as applied in the context of noisy mufflers. We affirm.

---

¶ 2. The trial court's decision was based upon testimony from trooper Vincent DiMauro that on the evening of July 20, 2001, he was on duty, sitting stationary in his cruiser at a highway exit in Hartland, Vermont. The time was around dusk, and his windows were open. The trooper's attention was drawn to an older Jeep Wagoneer approaching without its headlights on. The trooper described the sound of the exhaust as "a loud raspy noise versus a low mellow sound from a modified exhaust system." The trial court found that trooper DiMauro was an "experienced listener" on the basis of testimony that the trooper had once owned an older model Jeep and had experience working on automobile exhaust systems. The trooper thought that the sound was consistent with a perforated muffler. He stated that he stopped the Jeep, which was driven by Beauregard, because he thought that the car was being operated in violation of 23 V.S.A. § 1244, which requires that drivers illuminate headlights when necessary to provide adequate visibility, and in violation of 23 V.S.A. § 1221, which prohibits the operation of a motor vehicle that is not in good mechanical condition on a highway. Beauregard was subsequently arrested and processed for DUI. Defendant moved to suppress the evidence from the stop on the grounds that he did not violate 23 V.S.A. § 1244 because the stop occurred within thirty minutes of sunset and light was adequate to meet the statutory requirements, and that he did not violate 23 V.S.A. § 1221 because there are no standards for noise emissions from motor vehicles and noise was not a reasonable basis for believing that Beauregard's vehicle had defective equipment.

¶ 3. The lower court denied the motion to suppress. The court agreed with defendant that there was no headlight violation, but it held that the trooper could conduct a motor vehicle stop on the basis of a noisy exhaust system. This appeal followed.

¶ 4. The issue on appeal is whether a noisy exhaust system can provide a reasonable basis for a motor vehicle stop given that there is no specific statute regulating noise emissions. Since this is a question of law, we review it de novo. See *State v. Longe*, 170 Vt. 35, 36, 743 A.2d 569, 570 (1999) (questions of law reviewed de novo).

¶ 5. Section 1221 of Title 23 requires that "[a] motor vehicle, operated on any highway, shall be in good mechanical condition and shall be properly equipped." Under Vermont law, in order to be "properly equipped," a car must have a muffler. 23 V.S.A. § 4(37). Thus to comply with the statute, cars driven in Vermont must have a muffler that is functioning "in good mechanical condition." It is true that the statute is silent as to the degree of noise that might establish that a muffler is not in compliance with the statute, but defendant was not stopped for a noise violation; he was stopped because the trooper suspected defective equipment. Therefore, the only question before us is whether the trooper had the ability to detect a problem with the muffler on the basis of the sounds he heard when the Jeep passed by his patrol car.

¶ 6. The trial court credited testimony from trooper DiMauro that the trooper had experience with older model Jeeps, which provided him with some knowledge of the way they sounded when running in good condition. Trooper DiMauro testified that unlike the sounds that a Jeep normally makes, the sound he heard was loud, raspy, and consistent with a serious failing in the exhaust system. We agree with the trial court that the trooper's aural observations provided a reasonable basis for believing that defendant's vehicle was not in good mechanical condition, and that this was an adequate basis for the stop. "A reasonable and articulable suspicion of wrongdoing is necessary for a police officer to stop a motor vehicle that is being operated on the highway."

*State v. Welch*, 162 Vt. 635, 636, 650 A.2d 516, 517 (1994) (mem.); see also *State v. Emilo*, 144 Vt. 477, 481, 479 A.2d 169, 171 (1984) (holding that a police officer's "suspicion" that a car did not belong in a particular area in the early morning does not meet the requirement that a stop cannot be made without an "'articulable and reasonable'" suspicion of some criminal wrongdoing) (quoting *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). There is nothing vague about the requirement of § 1221 that mufflers must be "in good mechanical condition." When a sound emitted by a vehicle is entirely consistent with a prohibited defect, and a trooper has experience that enables him to make such a determination on the basis of sound, we find that a trooper has an adequate legal basis for stopping a vehicle. The level of suspicion required for a traffic stop under the Fourth Amendment is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The test for the validity of a vehicle stop is "'whether, based upon the whole picture, [the police] ... could reasonably surmise that the particular vehicle they stopped was engaged in criminal activity.'" *State v. Kettlewell*, 149 Vt. 331, 335, 544 A.2d 591, 594 (1987) (quoting *United States v. Cortez*, 449 U.S. 411, 421-22 (1981)). We find that the trooper in this case had a reasonable basis for believing that the muffler on defendant's Jeep was not in working order.

¶ 7. Defendant makes further arguments challenging the legality of the underlying statute. First, he challenges the application of § 1221 to noisy mufflers. He observes that while the state has established noise limits for snowmobiles, 23 V.S.A. § 3205, motorboats, 23 V.S.A. § 3309, and all-terrain vehicles, 23 V.S.A. § 3505, the Legislature did not establish noise emission standards for motor vehicles. Defendant correctly notes that according to the principles of statutory construction "[i]t is inappropriate to read into a statute something which is not there unless it is *necessary* in order to make the statute effective." *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996). By permitting a stop in this case, however, we are not establishing a noise limit for motor vehicles, but upholding the statutory requirement that a vehicle's exhaust system be maintained in good mechanical condition.

¶ 8. Second, defendant contends that Vermont's defective equipment statute is void for vagueness as applied in this case. He cites the void for vagueness doctrine, which establishes that penal statutes must define a criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. See *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). Defendant argues that the enforcement of 23 V.S.A. § 1221 on the basis of noise will lead to arbitrary and discriminatory enforcement actions. We are unpersuaded that the void for vagueness doctrine is implicated by the facts in this case. As we noted above, Vermont's motor vehicle law is explicit in terms of what is prohibited: it is a violation of § 1221 to drive a vehicle on a highway without a muffler that is in good mechanical condition. The statute does not prohibit innocent conduct, nor does it confer "vast discretion" on the police to determine what action constitutes a violation. See *Morales*, 527 U.S. at 60-61. For a motor vehicle stop to be valid, "the legal justification must be objectively grounded." *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998) (citing *Whren v. United States*, 517 U.S. 806, 812-14 (1996)). We believe that the State has demonstrated that the trooper in this case acted with an objectively grounded suspicion that de-

fendant's muffler was not in good working condition, and the stop was justified.

*Affirmed.*