NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0185n.06

No. 17-5034

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 10, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| HERMAN MAJORS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| UNITED STATES OF AMERICA, | ) | |
| | ) | OPINION |
| Respondent-Appellee. | ) | |
| | ) | |

Before: GRIFFIN, KETHLEDGE, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge**. In 2004, Petitioner-Appellant Herman Majors entered into a conspiracy to distribute cocaine with Adrian Patterson, Cleo Patterson, and others. Adrian Patterson would purchase bulk cocaine in California, which Majors, Cleo, and others would then transport to Tennessee. In late 2004, Majors was arrested while transporting twenty-six kilograms of cocaine, after which the shipments continued without his direct involvement until 2006, when Adrian Patterson was arrested.

Majors was convicted of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a) and 846. During sentencing, the Presentence Report ("PSR") calculated his Guidelines range based on the amount of cocaine transported during the entire conspiracy (more than 150 kilograms), resulting in a base offense level of 38. The amount of cocaine transported while Majors was transporting cocaine was somewhere between 60 and 106

kilograms, which would have resulted in a base offense level of 36, had it been used to calculate the base offense level.

Majors was sentenced to 360 months of imprisonment. When he was sentenced, he was already serving an undischarged state sentence of 120 months of imprisonment. Because the trial court did not indicate whether the federal sentence was to run concurrently or consecutively with that state sentence, the federal sentence defaulted, by operation of rule, to a consecutive sentence. Majors challenges his conviction and sentence pursuant to 28 U.S.C. § 2255. We affirm.

# I

The district court articulated the pertinent facts as follows:

Between 2004 and 2006, defendants [Adrian] Patterson and Majors participated in a drug trafficking conspiracy involving the possession and distribution of more than 150 kilograms of cocaine. Patterson purchased cocaine from dealers in Los Angeles, and arranged for it to be transported to Tennessee. Majors and other individuals traveled to and from Los Angeles with cash and drugs hidden in vehicles.

The conspiracy came to light over a period of years. In late 2004, while driving to Los Angeles, Majors and Cleo Patterson (a relative of Adrian Patterson's) were stopped for a traffic violation, and a search revealed 26 kilograms of cocaine in a hidden compartment of the vehicle. Both men were arrested. [The Oklahoma Indictment against Majors was dismissed without prejudice, but Cleo Patterson was tried, convicted, and sentenced to 360 months.] In 2006, agents of the Drug Enforcement Administration in Los Angeles and Nashville began collaborating on an investigation of a multi-kilogram cocaine transaction that was to take place in Tennessee. The Los Angeles agents had learned from a wiretap that a cocaine supplier would be traveling from Los Angeles to meet a buyer in Clarksville, Tennessee. The Nashville agents identified Adrian Patterson as buyer. With the participation of officers from the Clarksville Police Department, the agents established surveillance of the expected meeting site, which was located at 2211 Ladd Drive.

Soon thereafter, Tim Anderson of the Clarksville Police Department sought and obtained a warrant to search for evidence of drug trafficking at Ladd Drive. The

warrant was executed the same day, and Adrian Patterson was among those present during the search. Officers seized over $300,000 in cash, along with approximately one kilogram of cocaine. Also seized was a Ford F–150 that had been used to transport Herman Majors and Cleo Patterson from Los Angeles to Tennessee in 2004.

*Majors v. United States*, No. 3:15-cv-0799, 2016 WL 7438959, at *1–2 (M.D. Tenn. Dec. 27, 2016).

Majors and others were charged with conspiring to possess with intent to distribute five or more kilograms of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

The jury returned a guilty verdict, and the district court later sentenced Majors to 360 months of incarceration—the bottom of the Sentencing Guidelines range as calculated in the PSR. The conviction and sentence were affirmed on direct review. *United States v. Patterson*, 587 F. App'x 878 (6th Cir. 2014), *cert. denied*, *Majors v. United States*, 135 S. Ct. 1723 (Mar. 30, 2015).

Majors filed a motion to vacate his conviction and sentence in the district court on July 20, 2015, and he filed an amended motion to vacate on January 8, 2016. *Majors v. United States*, No. 3:15-cv-0799, 2016 WL 7438959, at *1. The district court denied all twenty-one grounds of relief Majors asserted in his amended motion but granted certificates of appealability as to three grounds. *Id*. at *13.

## II

The three grounds of relief now under our review all relate to the effectiveness of Major's counsel. We review the district court's legal conclusions de novo and uphold its factual findings unless they are clearly erroneous. *Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013).

Successfully arguing that trial counsel was constitutionally deficient requires showing both that "(1) his trial counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant." *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (internal quotation marks omitted).

In order to satisfy the first requirement, Majors must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland*, 466 U.S. 668, 687 (1984), and our review of his trial counsel's performance is highly deferential, for we must "apply a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *McPhearson*, 675 F.3d at 559 (quoting *Strickland*, 466 U.S. at 689). Specifically, "trial counsel's tactical decisions are particularly difficult to attack," and those decisions cannot be adjudged deficient if they "might be considered sound trial strategy." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (internal quotation marks omitted).

If Majors satisfies the first requirement, he must then show that there is a reasonable probability that "an increased prison term did flow from [the] error" to satisfy the prejudice prong. *Glover v. United States*, 531 U.S. 198, 200 (2001).

A

Trial testimony showed that Majors had transported between 60 and 106 kilograms of cocaine over the course of the conspiracy. At sentencing, Majors's counsel did not argue that Majors was responsible only for this cocaine and not the cocaine transported after his arrest. Counsel instead made the rather more ambitious argument that the testimony was insufficient to show that Majors had transported more than the 26 kilograms of cocaine with which he was arrested and that he was therefore responsible only for those 26 kilograms. Majors argues that

this decision to swing for the fences instead of attempting a base hit amounted to ineffective assistance of counsel under *Strickland*.

Under USSG § 1B1.3(a)(1)(B) (Nov. 2011),[1] a defendant is responsible for his conduct, as well as other "relevant conduct," which includes "in the case of a jointly undertaken activity . . . all reasonably foreseeable acts or omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction."

Majors points to an application note to this section that tells us that when a defendant "was hired only to help off-load a single shipment" in an otherwise ongoing distribution conspiracy, he "is not accountable for prior or subsequent shipments . . . because those acts were not in furtherance of his jointly undertaken criminal activity (the importation of the single shipment[])."  USSG § 1B1.3, comment. (n.2(c)(3)).

Majors's argument relies on this comment and on the government's statement at trial that "[Majors] was a courier, and on New Year's Eve, 2004 he was arrested on his final trip. . . . The Government has never contended that the Defendant—we had any proof about Defendant Herman Majors after that day. . . . Because there is no such proof.  Pure and simple."  Majors's argument is that while the government had proved that he had couriered on multiple occasions, it had not proved that he was anything more than a courier and that his counsel ought to have argued that USSG § 1B1.3, comment. (n.2(c)(3)) applied to him, limiting his responsibility to the cocaine that he had distributed.

Unfortunately for Majors's position, there is significant evidence that his involvement in the transportation conspiracy went well beyond merely being a courier.  As the district court

---

[1] The 2011 edition of the Sentencing Guidelines was in effect at the time Majors was sentenced and therefore continues to govern his claims in this petition. *See United States v. Jennings*, 945 F.2d 129, 135 n.1 (6th Cir. 1991) ("The version of the [sentencing] guidelines in effect at the time of sentencing is ordinarily applied.").

discussed in detail, in addition to transporting cocaine repeatedly, Majors was responsible for recruiting Cleo into the conspiracy, planned the travel logistics for the trips he took with Cleo, made trips with other coconspirators, transported both cash and cocaine as part of the conspiracy, and agreed that Cleo would take the responsibility for the cocaine found when Majors and Cleo were arrested, ensuring that Majors would remain free.

"Where a defendant is part of a jointly undertaken criminal activity involving drugs, the defendant is accountable for all quantities of contraband with which [he] was directly involved *and* . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [he] jointly undertook." *United States v. Watson*, 620 F. App'x 493, 513 (6th Cir. 2015) (alteration in original) (emphasis added) (internal quotation marks omitted).

Because there was significant evidence that Majors had been an integral member of the conspiracy and was involved in both planning and executing the scheme to distribute cocaine, and because the sentencing court would have only needed to find that Majors had jointly undertaken the entire conspiracy by a preponderance of the evidence, *see United States v. Jordan*, 20 F. App'x 319, 324–25 (6th Cir. 2001), it is likely that the sentencing court would not have accepted Majors's preferred argument, had it been made.

This prevents Majors from successfully making his ineffective-assistance-of-counsel claim for two related reasons. First, trial counsel's tactical decision to make the weak argument that Majors was responsible only for 26 kilograms of cocaine, which is already "virtually unchallengeable," *Buell v. Mitchell*, 274 F.3d 337, 360 (6th Cir. 2001) (internal quotation marks omitted), does not appear so foolhardy once we recognize that the alternative argument was similarly weak. If one is highly likely to strike out, one might as well swing for the home run.

Second, even assuming that trial counsel's decision was deficient, the weakness of Majors's preferred argument prevents him from showing prejudice. Because it is unlikely that the sentencing court would have accepted the argument that the cocaine shipments made after Majors's arrest were not "relevant conduct," Majors cannot show that there is a reasonable probability that his counsel's failure to make this argument resulted in his receiving a longer sentence. *See Glover*, 531 U.S. at 200.

B

The district court's judgment is silent as to whether Majors's sentence was to run concurrently or consecutively to his undischarged state sentence. Under 18 U.S.C. § 3584(a), when a federal judgment is silent on this matter, the sentences run consecutively.

Majors argues that his trial counsel was deficient for failing to argue that his federal and state sentences should run concurrently. He argues that had trial counsel made this argument, the trial court would have considered Majors's age, the length of the unexpired state sentence, and the fact that Majors's prior convictions consisted primarily of thefts and simple possession of drugs, and allowed Majors to serve the terms concurrently.

But as we held on direct review, the district court did consider Majors's age and criminal history during sentencing. *See Patterson*, 587 F. App'x at 892–93. The only factor that it did not explicitly consider was Majors's undischarged state conviction, but the district court did consider the PSR, *ibid.*, and the PSR clearly included that information.

Majors has presented no reason to think that the district court was unaware of its power to impose concurrent sentences or that, had it been reminded of this power, it would have chosen to do so. Given that Majors argued for a downward variance based on the factors he now argues would have persuaded the district court to issue a concurrent sentence, and given that the district

court declined to issue a downward variance, it seems unlikely that the district court would have been persuaded to issue a concurrent sentence, which would have been functionally identical to a downward variance. Majors therefore cannot show that he was prejudiced by his counsel's failure to argue that his federal sentence should have been served concurrently with his undischarged state sentence.

C

Finally, Majors argues that his appellate counsel was ineffective for failing to make the "relevant conduct" argument that Majors earlier argued his trial counsel was deficient for not making. Just as Majors cannot show that he was prejudiced when his trial counsel did not make an argument that was unlikely to be successful, he cannot show that he was prejudiced when his appellate counsel failed to make an argument that was unlikely to be successful. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

**III**

For the forgoing reasons, we **AFFIRM**.